UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| UNITED STATES OF AMERICA | |
|---|---|
| v. | No. 19-mj-4532-DHH |
| ZAOSONG ZHENG | |
| Defendant | |

## **MOTION TO RECONSIDER RELEASE**

The United States moves this Court to reconsider the government's motion to detain defendant Zaosong Zheng under 18 U.S.C. § 3142(f)(2)(A). As explained herein and at the detention hearing, Zheng has almost no connections to the United States and there is serious risk that he will flee from the United States making prosecution impossible because the People's Republic of China does not have an extradition treaty with the United States.

Procedural Background

On December 10, 2019, Zaosong Zheng was charged by criminal complaint with making materially false, fictitious or fraudulent statements in violation of 18 U.S.C. § 1001. Zheng made his initial appearance before this Court on December 11, 2019. The government moved for detention pursuant to 18 U.S.C. § 3142(f)(2)(A), on the ground that defendant poses a serious risk of flight and a detention hearing was scheduled for December 16, 2019.

At the detention hearing, the government called Special Agent Kara D. Spice, Federal Bureau of Investigation (FBI), who offered testimony about the circumstances around Zheng's charge and arrest. The Court took the matter under submission for further hearing on December 18, 2019. On December 18, 2019, the government again called Special Agent Spice and offered

further evidence in support of its motion for detention. The Court found that the government had met its burden of showing that defendant demonstrates a serious risk of flight but that the Court could fashion conditions to assure defendant's appearance. The Court ordered defendant released on a $100,000 bond, $15,000 of which was to be secured by cash posted by the defendant or a surety. The defendant is to be subject to electronic monitoring and is restricted from leaving the City of Boston or going to any airport.

The government hereby moves the Court to reconsider its order of release.

## Factual Background[1]

Zaosong Zheng is a Chinese national present in the United States on a J-1 Exchange Visitor Program[2] visa. Zheng was sponsored for his visa by Harvard University and he worked at the Beth Israel Deaconess Medical Center (BIMDC), conducting medical research.

On December 9, 2019, Zheng went to Boston's Logan airport with a ticket to China on Hainan Airlines flight 482. Customs and Border Protection (CBP) officers examined Zheng's checked baggage and found twenty-one vials of an unknown substance, wrapped in cellophane, stuffed in a sock, in one of Zheng's bags.

CBP officers contacted Zheng before he got on his flight and asked him, through a CBP officer fluent in Mandarin, whether there were any biological specimens in his luggage. Zheng denied that there were.

Zheng was then interviewed in another location within the airport and he admitted that, in fact the vials found in his luggage contained biomedical research specimens. Zheng admitted

---

[1] The following facts were adduced through testimony of Special Agent Kara D. Spice, Federal Bureau of Investigation, on December 16 and December 18, 2019.

[2] Information about the J-1 visa program can be found publicly at https://j1visa.state.gov/basics.

that he had stolen some of the vials from the BIDMC lab and that some of the other vials contained specimens that he had produced by replicating someone else's work, without the knowledge or authorization of his lab. Zheng claimed that he intended to bring the specimens to a lab where he works in China to conduct further research, publish a paper and take credit for the work that he had stolen from the United States.

Zheng had two laptop computers, a cellphone, and a flashdrive with him at the airport. Zheng claimed that one of the laptops belonged a person named Lei Liu, and that Zheng was bringing it to China because Lei Liu did not have room in his luggage to carry it himself. A cursory search of the laptop, pursuant to CBP's border search authority, revealed what appeared to be research material. It is not yet known if Liu's laptop computer contains intellectual property or trade secrets of BIDMC. Nor do we know yet know the value of the stolen materials in Zheng's possession. Depending on what is in those vials, Zheng may face additional and more serious charges, including 18 U.S.C. §§ 1832 (theft of trade secrets) and 2314 (transportation of stolen goods in interstate or foreign commerce).

CBP seized the vials found in Zheng's luggage and kept his electronic devices but let Zheng leave, explaining to him that if he had a flight the following day, it was possible that he could get his devices back (or words to that effect).

On December 10, 2019, Zheng returned to the airport. He had booked a flight to China that afternoon. When Zheng arrived he was met by FBI agents who detained and interviewed him. With the aid of a Mandarin linguist, Zheng was advised of his *Miranda* rights, which he waived, and was then interviewed. Zheng explained that he worked for Wenyi Wei, the director of the laboratory at BIDMC, conducting research related to cancer. Zheng admitted that he had stolen biological specimens from BIDMC and that he was trying to get the specimens to China

3

for further research. Zheng claimed that the specimens he tried to smuggle out of the country were intended for use in cancer treatment research. While Zheng was being interviewed a complaint was issued charging him with violating 18 U.S.C. § 1001 and a warrant was issued for his arrest. After his interview, Zheng was arrested. CBP officers asked Zheng where his baggage was and he told CBP officers that his roommate was outside the airport with his bags.

On the afternoon of December 16, 2019, undersigned counsel spoke with counsel for BIDMC. Although at the time of the conversation, the captioned matter was sealed, counsel for BIDMC assured government counsel that, if a laboratory researcher at BIDMC were found to have stolen from the lab, that researcher would be immediately fired. If that person were a J-1 visa holder, sponsorship for his or her visa would be immediately rescinded.

On December 17, 2019,[3] FBI agents searched Zheng's apartment pursuant to a warrant. In the apartment, agents found Zheng's former roommate, Jialin Li. Li, a Chinese national, also in the United States on a J-1 visa, is a medical researcher who like, Zheng, was working for Wenyi Wei, the director of the lab at BIDMC. Li told agents that Zheng had packed all of his belongings in suitcases before leaving for the airport on December 9, 2019. Although on December 10, 2019, when asked by CBP officers where his luggage was, Zheng claimed that his roommate was outside the airport with his bags, on December 17, 2019, when asked by FBI agents, Jialin Li denied driving Zheng to the airport.

The bags appear to contain most, if not all of Zheng's personal belongings in the apartment.

---

[3] The following facts were learned following the December 18, 2019, continued detention hearing and are set forth in the attached affidavit of Special Agent Spice.

Jialin Li indicated that two other Chinese nationals, Lei Liu and Leina Mo, who had worked at the same laboratory run by Wenyi Wei had recently returned to China, smuggling biological materials.

## ARGUMENT

This Court retains jurisdiction over the matter of defendant's release and can amend an order of release at any time. 18 U.S.C. § 3142(c)(3).

At the time the parties last appeared before the Court, the government was not aware that Zheng had packed nearly all of his personal belongings into suitcases and was ready to leave with them to China on December 9, 2019. The government was also unaware that Lei Liu, the person whose computer Mr. Zheng claimed he was carrying, had, according to Zheng's roommate and fellow lab researcher, also smuggled biological specimens out of the United States to China.

These facts demonstrate that on December 9, 2019, Zheng intended to leave the United States and not return. It also strongly suggests that Zheng's theft and attempt to smuggle biological specimens out of the United States, was not an isolated incident. Rather, it appears to have been a coordinated crime, with likely involvement by the Chinese government, as at least two other Chinese nationals working at the same lab have also stolen biological materials and smuggled them out of the United States in violation of 18 U.S.C. § 554.

Were Zheng released and intent on returning to China, as his conduct would suggest, the United States Attorney's Office would not be able to prevent Immigration and Customs Enforcement from removing Zheng. This is because the release or detention of a defendant pending trial under the bail reform act (BRA) is a separate matter from the same defendant's release or detention by immigration authorities pending removal from the United States.

"Detention of a criminal defendant pending trial pursuant to the BRA and detention of a removable alien pursuant to the INA [Immigration and Nationality Act] are separate functions that serve separate purposes and are performed by different authorities." *United States v. Vasquez-Benitez*, 919 F.3d 546, 552 (D.C. Cir. 2019). "So long as ICE [Immigration and Customs Enforcement] detains the alien for the permissible purpose of effectuating his removal and not to skirt the Court's decision in setting the terms of his release under the BRA, detention does not offend separation-of-powers principles simply because a federal court, acting pursuant to the BRA, has ordered that same alien released pending his criminal trial." *Id.* (internal quotations and brackets omitted).

Therefore, although the United States Attorney's Office could ask Immigration and Customs Enforcement to refrain from removing Zheng, it would still be within ICE's discretion to do so. Here, Zheng has every incentive to flee and no reason to stay in the United States where he faces prosecution for the current charge and a high likelihood of additional, more serious charges. Because the United States does not have an extradition treaty with the People's Republic of China, if Zheng flees or is removed, the government will be unable to prosecute him.

CONCLUSION

For all of the reasons set forth on December 16, and December 18, 2019 and because it appears that Mr. Zheng was intented to leave the United States on December 9, 2019 and not return, the government would ask the Court to reconsider its release order and order Zheng detained pending trial  As this Court itself recognized, Zheng poses a serious risk of flight. There are no conditions that will guarantee his attendance at trial.  Accordingly, the government respectfully requests that this Court reconsider its order of release and detain Zheng.

        Respectfully submitted,

        ANDREW E. LELLING
        United States Attorney

By:   */s/ Ben Tolkoff*
        BENJAMIN TOLKOFF
        Assistant United States Attorney
        617-748-3183

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Ben Tolkoff*
BENJAMIN TOLKOFF
Assistant United States Attorney

Date: December 20, 2019